**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

ASHLEY W. o/b/o
GEORGE W., Deceased[1],

      **Plaintiff,**

                                **Civil Action 1:24−cv−578**

  v.                              **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF
SOCIAL SECURITY,

      **Defendant.**

**OPINION AND ORDER**

Plaintiff, Ashley W. o.b.o. George W., Deceased, brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner")

denying his application for social security disability insurance benefits ("DIB"). This matter is

before the Court on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's

Memorandum in Opposition (ECF No. 14), Plaintiff's Reply (ECF No. 16), and the administrative

record (ECF No. 7).  For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of

Errors (ECF No. 13) and **AFFIRMS** the Commissioner's decision.

## I.   BACKGROUND

Plaintiff protectively filed his applications for DIB and supplemental security income

("SSI") on August 13, 2019, alleging that he has been disabled since May 16, 2019, due to Type

2 insulin dependent diabetes, Bipolar Disorder, anxiety, major depressive disorder, ADHD

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

combined type, heart disease/blockages, bleeding in center and outer eye, eye stroke, neuropathy, arteric ischemic optic neuropathy, difficulty concentrating, hyperlipidemia, heart disease, chronic back pain, and blackouts. (R. at 427−38, 482, 515.) Plaintiff's applications were denied initially in January 2020 and upon reconsideration in June 2020. (*Id.* at 173−81, 193−202.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (*Id.* at 281−82.) ALJ Renita K. Bivins held a telephone hearing on December 22, 2020, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 108−44.) A vocational expert ("VE") did not have an opportunity to testify. Plaintiff passed away on May 12, 2021. (R. at 2222.) Plaintiff's daughter, Ashley, W., entered a notice of substitution of party. (R. at 315-19.) The ALJ held a supplemental hearing on May 25, 2021, where the VE, appeared and testified. (R. at 79-107.) On August 25, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 215−43.) The Appeals Council granted Plaintiff's request for review for the DIB application only and remanded the matter for further proceedings. (R. at 244−50.)[2]

The Appeals Council remanded and vacated the ALJ's August 2021 decision, in part because the ALJ's decision did not contain an adequate function-by-function assessment of the Plaintiff's ability to do work-related mental activities, noting although the RFC limited Plaintiff to interacting with the general public on a superficial basis, it did not contain an assessment regarding the Plaintiff's ability to interact with supervisors and co-workers. (R. at 247.) The Appeals Council indicated that, upon remand, the ALJ would "[g]ive further consideration to the

---

[2] The Appeals Council denied Plaintiff's request to review of the ALJ's August 25, 2021 decision dismissing Plaintiff's SSI application. (R. at 253-56). This issue is not contested in the current case.

claimant's maximum [RFC] and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations. . . ." (R. at 248.)

On remand, the claim was assigned to the same ALJ who held a telephone hearing on February 23, 2023.  (R. at 51−78.)  ALJ Bivins held another hearing and issued another unfavorable decision denying benefits on May 18, 2023. (R. at 18-41.)  After conducting a review of the evidence regarding Plaintiff's mental health impairments, the ALJ found that Plaintiff had no severe mental impairments and no mental RFC limitations.  (R. at 18-41.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision in August 2024 and determined that the ALJ had not abused her discretion in changing her view as to Plaintiff's mental impairments and associated limitations. (R. at 1-6.)  The ALJ's May 2023 decision, therefore, became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g).

## II.    RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and hearing testimony as to Plaintiff's conditions and resulting limitations. Given the claimed errors raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.    ADMINISTRATIVE DECISION

On May 18, 2023, the ALJ issued her decision.  (R. at 15−50.)  The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2024.

(R. at 22.)  Then, at step one of the sequential evaluation process,[3] the ALJ found that Plaintiff

had not engaged in substantial gainful activity since May 16, 2019, the alleged onset date.  (*Id.*)

At step two, the ALJ found that Plaintiff had the following severe impairments: chronic ischemic

heart disease; diabetes mellitus (DM); hypoglycemia; peripheral neuropathy; retinal disorder;

low vision; labyrinthitis.  (*Id.*)  At step three, the ALJ further found that Plaintiff does not have

an impairment or combination of impairments that meets or medically equals the severity of one

of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 25.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: he could lift and carry up to 10 pounds occasionally and 10 pounds frequently. He could stand and/or walk 2 hours per 8-hour day and sit 6 hours per 8-hour day with normal breaks. He could never climb ladders, ropes, or scaffolds. He must avoid all exposure to unprotected heights of ladders, ropes, or scaffolds, dangerous machinery or commercial driving. He requires to limited use of a cane to go to and from the workstation while carrying

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> objects in the freehand. He had no left visual acuity but retained
> sufficient right visual acuity to handle large objects and avoid
> ordinary hazards in the workplace such as boxes on the floor, doors
> ajar, or approaching people or vehicles. He could perform work not
> requiring fine visual acuity like tying thread or threading a needle.
> He was limited to frequent near visual acuity.

(R. at 26.)

At step four of the sequential process, relying on the VE's testimony, the ALJ determined that Plaintiff was capable of his performing past relevant work as a telephone solicitor, as the work does not require the performance of work-related activities precluded by his RFC. (R. at 40.) The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since May 16, 2019. (R. at 41.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices the claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.  ANALYSIS

Plaintiff raises three issues in his brief, all related to the ALJ's findings in her May 2023 post-remand decision that Plaintiff had no severe mental impairment and no mental RFC limitations as opposed to her August 2021 pre-remand decision to the contrary. Plaintiff contends that "the ALJ's actions on remand in retracting or deleting both her previous step 2 determination and her concomitant mental residual functional capacity determination constitute a clear abuse of discretion and are not in any case supported by substantial evidence." (ECF No. 13 at PageID 2759−78.) Plaintiff also contends that the ALJ erred by substituting her own non-medical opinions for those of the three examining and/or reviewing psychologists, Drs. Wagner, Tishler, and Williams. (*Id.* at PageID 2779-80.) Plaintiff's third assignment of error likewise has to do with the ALJ's retraction of her prior findings. According to Plaintiff, the ALJ's actions violate *res judicata* principles under *Drummond* or AR 98-1(6) or under *Earley* or AR

6

24-1(6) given that the only thing that had changed from the first two hearings to the third was that Plaintiff had passed away. (*Id.* at PageID 2780-85.)

The Commissioner counters that the ALJ was squarely within her authority, after the Appeals Council remanded the case and specifically vacated her decision, to reconsider the evidence regarding the mental health impairments and reach different findings if the record so warranted. (ECF No. 14 at PageID 2790-99.)

### A. The ALJ's Retraction of her previous Step 2 determination

Plaintiff contends that the ALJ erred at Step Two of the sequential evaluation by changing her findings regarding the mental impairments to avoid finding Plaintiff disabled at steps four and five of the sequential evaluation process. (ECF No. 13 at PageID 2759-78.)

In her August 2021 decision, at step 2, the ALJ determined that Plaintiff had the following severe impairments: ischemic heart disease; diabetes mellitus with peripheral neuropathy; low vision related to non-arteritic anterior ischemic optic neuropathy of the left eye; bilateral retinopathy and cataracts, with macular edema and vitreous hemorrhage of the right eye; degenerative disc disease; episodes of dizziness of unclear etiology; a depressive disorder; an anxiety disorder; and attention deficit and hyperactivity disorder (ADHD). (R. at 221.) In her May 2023 decision, the ALJ determined that Plaintiff had the following severe impairments: chronic ischemic heart disease; diabetes mellitus; hypoglycemia; peripheral neuropathy; retinal disorder; low vision; and labyrinthitis. (R. at 22.) The ALJ found that Plaintiff's depressive disorder, anxiety disorder, and attention deficit and hyperactivity disorder were "non-severe." (R. at 22-24.) The decision does not mention degenerative disc disease as either a severe or "non-severe" impairment.

Plaintiff contends the ALJ abused her discretion in finding no severe mental impairments and no mental RFC limitations in her May 2023 decision.  To be clear, as Plaintiff points out, nothing in record had changed except that the claimant had passed away.  It would seem logical that the ALJ would arrive at the same conclusions.  But, contrary to what Plaintiff contends, the Appeals Council did not direct the ALJ to come to any particular conclusions.  Although it found the ALJ's RFC did not contain an assessment regarding the claimant's ability to interact with supervisors and co-worker, it directed the ALJ upon remand to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with respect to references to the evidence of record in support of the assessed limitations."  (R. at 248.)[4]

As noted, Plaintiff's Statement of Errors rests chiefly on one narrow issue about the RFC the ALJ adopted in the 2023 decision.  Plaintiff argues that the ALJ's assessment of his RFC in the 2023 decision is not supported by substantial evidence because ALJ Bevin's assessed a different RFC in her 2021 decision and did not explain why she made that change.

In response, the Commissioner argues that because the Appeals Council vacated the 2021 decision and remanded the matter to the ALJ without limiting the ALJ's authority to make different findings on remand,[5] ALJ Bevins was not bound by his earlier findings and was under no obligation to explain any differences in the two decisions. (Def's Br. at 5-8.) The Commissioner further argues that, regardless of the 2021 decision, the ALJ's latter RFC assessment finds support in the record.  The Court agrees.

---

[4] Notably, the Appeals Counsel did not remand the case essentially instructing the ALJ to reconsider her finding regarding Plaintiff's mental health impairments, as the Commissioner suggests.  (Def's Opp. at p.5.)

[5] The Notice of Order of Appeals Council Remanding Case to Administrative Law Judge specifically states that, "[i]n addition to what we ordered the Administrative Law Judge to do,

The ALJ did not abuse her discretion in finding no severe mental impairments and no mental RFC limitations in her May 2023 decision.  Even though the same ALJ issued both decisions, she was not bound by her prior findings because the Appeals Council specifically "vacate[d]" her earlier decision dated August 2021 under the authority of 20 C.F.R. § 404.977. (R. at 246).  Because the Appeals Council vacated the prior decision, the ALJ was not bound by her findings in the August 2021 decision and did not err in reconsidering the evidence and reaching new findings in her May 2023 decision.

"[W]hen Plaintiff's request for remand was granted, the previous ALJ's decision was vacated, and the current ALJ was left to reconsider Plaintiff's claims, *de novo*, for the entire adjudicated period.  *Terrago v. Comm'r of Soc. Sec. Admin.*, 2014 WL 2442233, at *3 (N.D. Ohio May 30, 2014).  Plaintiff asserts that *Terrago* is inapposite because in that case a prior ALJ's decision had been vacated, and the case was then assigned to a *different* ALJ.  (Pl.'s Reply, at p. 5.)  But under the applicable case law, that is a distinction without a difference.

As our sister Court has explained in detail, upon remand, an ALJ is not required to give credence to and/or explicitly analyze his or her findings in an earlier decision.  In *Prevost v. Commissioner of Social Security*, a case involving a remand to the *same* ALJ, the Court found as follows:

---

the Administrative Law Judge may also do anything else needed to complete the claim." (R. at 244.)

> The Appeals Council's February 2019 remand order effectively nullified ALJ Blatnik's 2018 decision. *See* Social Security Administration, Hearing, Appeals, and Litigation Law Manual ("HALLEX") I-3-7-1 (https://www.ssa.gov/OP_Home/hallex/I-03/I-3-7-1.html) ("In most cases, the [Appeals Council] will vacate an ALJ's decision in its entirety when it remands a case. This action requires that an ALJ issue a new decision in the case.") (last accessed March 31, 2021). Given that the prior decision is typically vacated "in its entirety," it makes sense that the HALLEX does not direct the ALJ to explain any differences between his original decision and the one issued after remand.
>
> Moreover, because the ALJ's 2018 decision was vacated, it never became final, and it did not bind the ALJ to any extent in 2019. *Cf.* 20 C.F.R. § 404.955(a) (ALJ's decision is "binding on all parties to the hearing *unless* ... [y]ou or another party request a review of the decision by the Appeals Council within the stated time period, and the *Appeals Council reviews your case*") (emphasis added).

*Prevost v. Comm'r of Soc. Security*, Case No. 20-cv-11961, 2021 WL 2349348, at \*4–5 (E.D. Mich.), *report and recommendation adopted*, 2021 WL 1940487 (E.D. Mich 2021).

*Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570 (6th Cir. 2003), is directly on point. Like this one, *Wireman* involved a single claim for benefits that was remanded, and the claimant there also argued that the "most recent ALJ decision regarding his [RFC] [was] erroneous as it [did] not adopt the findings of a previous ALJ decision." *Id.* at 571. The Sixth Circuit rejected this argument because the prior ALJ decision "never became final as [it was] vacated pursuant to [a] remand[ ] for further proceedings." *Id.* Because the only final decision in that record was the latest ALJ decision currently before the court, the Sixth Circuit found that the ALJ was not bound by any of the vacated findings in the prior ALJ decision. *Id.* The facts and issue in this case are substantially similar with *Wireman* because, here, the ALJs 2023 decision is also the only final decision before the Court.

For these reasons, the Court concludes that nothing prevented ALJ Bivens from assessing a different RFC in 2023 than she did in 2021.  The ALJ did not abuse her discretion.[6]  Plaintiff's Statement of Errors is **OVERRULED** in this regard.

### B.  The ALJ's Compliance with *Drummond* and *Earley*

Plaintiff argues that *res judicata* principles would, absent new and changed circumstances, preclude or bar the ALJ from changing either her prior mental severe impairments determination or her concomitant mental RFC determination.  (EFC No. 13 at PageID 2783.)  "Stated differently, Plaintiff submits that Judge Bivens was under the *Drummond* A.R. 98-4(6), which was then in effect at the time that Judge Bivens issued her remand decision in 2023, legally required to accept based on res judicata principles her earlier determinations on the severe impairment and mental RFC issues." (*Id.*)  In response, the Commissioner maintains that the ALJ was not legally barred from revisiting the findings in her August 2021 pre-remand decision in her May 2023 post-remand decision because the ALJ's August 2021 decision was not a final decision on a prior disability claim and concerned the same disability application or claim as her August 2021 decision.  (ECF No. 14 at PageID 2797-99.)

In this Circuit, the principles of *res judicata* apply to both disability applicants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997).  Specifically, the *Drummond* Court found that, absent evidence of "changed circumstances" relating to an applicant's condition, "a subsequent ALJ is bound by the findings of

---

[6] The Appeals Council also considered Plaintiff's argument that the ALJ arbitrarily and capriciously changed her view as to the extent of Plaintiff's mental impairments and associated limitations to avoid having to find Plaintiff disabled.  After reviewing the entire record, including the hearing recording, the Appeals Council determined that the ALJ  did not abuse her discretion. (R. at 1.)

a previous ALJ." *Id.* at 842. In response to *Drummond*, the Social Security Administration subsequently issued Acquiescence Ruling ("AR") 98-4(6), which provides:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (Soc. Sec. Admin. June 1, 1998).

Thereafter, the Sixth Circuit clarified the scope of *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). In *Earley,* the Sixth Circuit explained that *res judicata* only applies if an applicant files a subsequent application for the same period of disability that was rejected in the prior decision. *Id.* at 933. The Sixth Circuit pointed out that *Drummond* was never intended to extend *res judicata* to foreclose review of a new application for a new period of time, reasoning that "[a]ny earlier proceeding that found or rejected the onset of disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Id.* Rather, in cases where disability is alleged for a distinct period of time, the application is entitled to a "fresh look." *Id.* This, of course, is not to say that a subsequent ALJ cannot consider a prior ALJ's decision. After all, in the absence of new and additional evidence, the subsequent ALJ may treat the prior ALJ's findings as "legitimate, albeit not binding, consideration in reviewing a second application." *Id.*

Nonetheless, in order to effectuate the intent of *Earley*, a meaningful "fresh look" must provide an applicant with an "opportunity for a full hearing, with no presumptions applied, when the claim covers a new period of time not addressed in the prior hearing." *Ferrell v. Berryhill*, No.

12

1:16-CV-00050, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019); *see also*, *Maynard v. Comm'r of Soc. Sec.*, No. 2:18-CV-959, 2019 WL 3334327, at *6 (S.D. Ohio July 25, 2019) (Jolson, M.J.), *report and recommendation adopted*, No. 2:18-CV-959, 2019 WL 3891859 (S.D. Ohio Aug. 16, 2019) (Smith, D.J.). Otherwise, an applicant whose claim is heard before an ALJ applying the presumption set forth in AR 98-4(6) faces "an unwarranted procedural burden… at the second hearing." *Id.* In short, when evaluating a subsequent application for benefits for a distinct period of time, an ALJ may consider a previous ALJ's RFC assessment but errs "when he considers the previous RFC a mandatory starting point for the analysis." *Gale v. Comm'r of Soc. Sec.*, No. 1:18-CV-859, 2019 WL 8016516, at *5 (W.D. Mich. Apr. 17, 2019), *report and recommendation adopted*, No. 1:18-CV-859, 2020 WL 871201 (W.D. Mich. Feb. 21, 2020).

For the reasons stated above, Plaintiff's reliance on *Drummond* and *Earley* are misplaced. In *Drummond*, the Sixth Circuit held that the RFC findings of an ALJ in a *final decision* concerning a prior claim are binding on the ALJ considering a subsequent claim, absent evidence of improvement in the claimant's condition. *Id.* at 842. But, *Drummond's* holding does not apply here because the ALJ's 2021 decision did not involve a prior claim, nor did it ever become final; rather, the Appeals Council vacated it. *See Wireman*, 60 F. App'x at 571 (distinguishing *Drummond* on these bases). This aspect of Plaintiff's Statement of Errors is also **OVERRULED**.

### C. The ALJ's RFC Determination

The relevant inquiry is not, as Plaintiff contends, whether the ALJ adequately justified the changes in her findings. Indeed, Plaintiff has cited no authority in support of that proposition. Rather, the only relevant inquiry is whether the ALJ's findings in the May 2023 decision are adequately explained and supported by substantial evidence. The Court concludes that they are.

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must assess a claimant's RFC based on all

the relevant evidence in a claimant's case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4). "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions. . . .

14

(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes. . . . 20 C.F.R. § 404.1513(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §404.1520c.  These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).  Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).  Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination

15

or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. § 404.1520c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. § 404.1520c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how she evaluated each opinion or finding individually but must instead articulate how she considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. § 404.1520c (b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July

2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4)

(differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further

clarifying the difference between "supportability" and "consistency" for purposes of the post-

March 27, 2017 regulations)).

The ALJ summarized and analyzed the prior administrative medical findings of the state

agency consultants, Carl Tischler, Ph.D., and Joan Williams, Ph.D. as follows:

> The [ALJ] finds the State agency mental assessments completed by Carl Tishler, Ph.D. dated January 15, 2020 and Joan Williams, Ph.D. dated June 6, 2020, which find mild to moderate mental limitation, are not persuasive (B2A, B3A, B6A, B7A). Specifically, they opined [Plaintiff] could carry out 1-4 step work tasks and engage in superficial contact with others in the workplace. The undersigned finds this is an overestimate of the severity of [Plaintiff]'s restrictions/limitations. The State agency assessments are not entirely consistent with the overall medical evidence of record and the findings of [Plaintiff]'s treating physicians. For example, in September 2019, Yazan Suradi, M.D.'s examination found [Plaintiff] awake, alert, and oriented with fluent speech (B20F/72). Additional findings that month note [Plaintiff] was in no acute distress, alert and oriented, with intact cranial nerves, and was reportedly negative for depression (*Id.* at 50, 52; see also B10F/9, 29 for similar findings). It was noted [Plaintiff] was negative for memory loss (*Id.* at 47). The next month, it was observed [Plaintiff] was not nervous or anxious and examination found [Plaintiff] in no distress, alert, oriented, and with normal behavior and thought content (B15F/11). Similarly, in November 2019, the record documents [Plaintiff] appeared alert, oriented x4, and with no focal deficits (B20F/35, 42). He displayed benign affect, normal mood, and his cognition prior to admission showed appropriate judgment and safety awareness (*Id.*). He was reportedly negative for depression with the examination describing him as cooperative (*Id.* at 26-27).
>
> Indeed, treatment records from 2018 through 2020 from one of [Plaintiff]'s treating sources note mental status examinations finding [Plaintiff] alert and oriented with appropriate mood and affect with a review of systems negative for psychiatric symptoms (B14F/6, 8, 11, 16). Two months prior to the consultative examination, the medical record notes a review of systems again indicated [Plaintiff] was not nervous or anxious with examination findings him in no acute distress, alert, and oriented (*Id.* at 8, B15F/11). His behavior was normal as was thought content (B15F/11). Also of note, 5 days earlier, a consultative examination noted [Plaintiff] was able to describe his medical symptoms, carry on a good conversation, and take

17

part in performing requested tests. He appeared to have good memory of medical events (B12F/15).

Records dated September, October, and November 2019 and February 2020 detail intact orientation, appropriate mood, and negative psychiatric symptoms (B14F/6, 8, 11, 16). Moreover, in May 2020, [Plaintiff]'s treating provider, Stacy Fletcher, CNP, noted [Plaintiff] acknowledged his anxiety was "doing okay" and he had not had his Xanax filled. His review of systems was negative for depression and insomnia with a PHQ-2 score of 1 (B16F/7-8). Ms. Fletcher's examination found [Plaintiff] with no suicidal or homicidal ideations, in no acute distress, with normal ability to communicate, intact cranial nerves, and normal psychiatric functioning, including normal orientation, mood, and affect (*Id.* at 9). His ADHD was listed as stable and his bipolar disorder in partial remission (*Id.*). Subsequent records dated January 2021 again note [Plaintiff] was reportedly negative for memory loss with no obvious psychiatric symptoms identified (B20F/13). Additional findings in October 2021 again note normal findings (B14F/16) with a review of systems negative for psychiatric symptoms or complaints (*Id.*). [Plaintiff] testified he has not required inpatient treatment or hospitalization for mental health symptoms; he has no problems getting along with others and that his most significant limitation is his vision.

(R. at 35-36.)

The ALJ also summarized and analyzed the statements of consultative examiner, Ryan

Wagner, Psy.D. as follows:

The [ALJ] finds the opinion of Ryan Wagner, Psy.D., who completed a consultative psychological evaluation of [Plaintiff] dated December 28, 2019 is not persuasive (B13F). During the evaluation, [Plaintiff] reported no problems understanding directions. Mental status examination found him cooperative with rapport adequately established. His thought process was clear and logical. His receptive language skills were adequate. His thought content was noticeable for anxiety and mood swings. Speech was clear and well articulated. He appeared somewhat nervous but was able to maintain eye contact and did not appear overly distressed (*Id.* at 4). He remained alert, responsive, and oriented to all spheres. He was not confused and had no difficulty recalling aspects of his upbringing. He repeated 5 digits forward and 3 backward and 3 of 3 words after a brief delay. He was able to calculate one iteration of Serial 7s and serial 3s with one error. He mentally calculated basic subtraction, multiplication, and division. Knowledge appeared intact. Judgment appeared sufficient for him to make decisions affecting his future and conduct his own living arrangements efficiently.

18

Dr. Wagner diagnosed bipolar II disorder and generalized anxiety disorder and found [Plaintiff] capable of managing funds. He observed [Plaintiff] performed in the low average range on brief abstract reasoning activities suggesting difficulty understanding instructions. He noted low average performance on brief short-term memory activities suggesting difficulty remembering instructions. He noted [Plaintiff] could converse effectively to complete the evaluation and did not report problems learning work-related activities. These findings are not entirely consistent with Dr. Wagner's notation that [Plaintiff] reported no problems understanding directions (*Id.* at 2). Dr. Wagner noted [Plaintiff] struggled with Serial 7s and Serial 3s, suggesting some difficulty maintaining attention and focus but displayed adequate task persistence when answering questions. He noted problems with attention and concentration in work environments which may affect [Plaintiff]'s ability to complete tasks in a timely effective manner. However, Dr. Wagner's examination found [Plaintiff] alert, responsive, and oriented to all spheres. He was not confused and had no difficulty recalling aspects of his upbringing and was able to mentally calculate basic subtraction, multiplication, and division (*Id.* at 4). Dr. Wagner found [Plaintiff] was cooperative and pleasant and did not describe a history of conflict with others. He observed [Plaintiff] appeared depressed and anxious when discussing past and current pressures and his depressive symptoms may compromise his ability to respond to work pressures and anxious symptoms may compromise his ability to respond to work pressures and lead to increased agitation and experience of panic attacks.

This opinion is not entirely persuasive as not entirely consistent with Dr. Wagner's own observations and notations that [Plaintiff] reported no problems understanding directions, was cooperative, rapport was adequately established, his thought processes were clear and logical, receptive language skills were adequate, and he was alert, responsive and oriented to all spheres.

Further, he was not confused and had no difficulty recalling aspects of his upbringing. He repeated 5 digits forward and 3 digits backward and 3 of 3 words after brief delay. He was able to calculate one iteration of serial 7s and complete serial 3s in 24 seconds making one error. He mentally calculated basic subtraction, multiplication and division and his fund of knowledge was intact (*Id.* at 2-5). He also found [Plaintiff]'s judgment appeared to be sufficient for him to make decisions affecting his future, conduct his own living arrangements efficiently and he was capable of managing funds (*Id.*). He was able to converse effectively to complete the evaluation. He did not report problems learning work-related activities and he displayed adequate task persistence when answering questions (*Id.* at 5).

Further, this opinion is not entirely consistent with the overall medical evidence of record and subsequent medical evidence of record. In September 2019, for

19

example, examinations found [Plaintiff] in no acute distress, alert and oriented times 3 with normal affect, judgment, and mood (B10F/9, 29). Treatment records from 2018 through 2020 note similar findings, finding [Plaintiff] alert and oriented times with appropriate mood and affect with a review of systems negative for psychiatric symptoms (B14F/4,6, 8, 11, 16; see also B15F/11). Also of note, 5 days earlier, consultative examiner Dr. Hassan found [Plaintiff] was able to describe medical symptoms, carry on a good conversation, and take part in performing the requested tests. [Plaintiff] appeared to have good memory of his medical events (B12F/15). Moreover, in May 2020, Stacy Fletcher CNP noted [Plaintiff]'s report that his anxiety was "doing okay," he had not had his Xanax filled and a review of systems was noted to be negative for depression, insomnia with a PHQ-2 score of 1 (B16F/7, 8). Nurse practitioner Fletcher's examination found [Plaintiff] with no suicidal or homicidal ideation and in no acute distress, with normal ability to communicate, cranial nerves grossly intact and psychiatrically normal functioning including oriented to time, place, person and situation with an appropriate mood and affect. She opined [Plaintiff]'s ADHD was stable and his bipolar disorder was in partial remission (*Id.* at 9). [Plaintiff] testified that he had only started ADHD medication 2 years prior to the hearing. [Plaintiff] testified he did not require inpatient treatment or hospitalization for his mental health symptoms but did meet with someone at his family doctor's office one and a half years prior for 3 months. [Plaintiff] further testified he had no problems getting along with family, friends neighbors or others. The undersigned inquired as to whether [Plaintiff] had any difficulty with memory and maintaining attention and concentration, to which he responded that he was trying to think of an example of his difficulties. He then stated that he reads the same sentence over and over. On the other hand, [Plaintiff] testified that his most significant limitation is his vision. [Plaintiff]'s testimony did not suggest more than mild mental health limitations.

Also of note, while Dr. Wagner had the opportunity to examine [Plaintiff] in person, he did so on only one occasion and not in a treating context.

(R. at 38-39.)

Plaintiff argues that the ALJ played doctor and substituted her own judgment for those of the three psychologists above when she found their opinions unpersuasive. (ECF No. 13 at PageID 2779-80.)  A brief review of the ALJ's analysis here completely undermines Plaintiff's argument.

As the Commissioner points out, when considered as a whole, the record supported the ALJ's determinations:

- reviews of symptoms that were negative for psychiatric complaints such as depression, memory loss, fatigue, and insomnia (which is a low score for depressive symptoms) (R. at 23-24, 36, citing 2171, 2173, 2176, 2181, 2210, 2211, 2212, 2235, 2248-2249, 2269, 2272);

- normal physical examination findings showing that Plaintiff was alert and fully oriented with intact cranial nerves, no distress, fluent speech, normal mood, normal affect, normal behavior, normal judgment, normal memory, normal cognition, no nervousness or anxiousness, and appropriate responses, written expression, reading, conversation, responsive naming, commands, and sentence completion (R. at 23-24, 36, citing R. at 1859, 1879, 2154, 2171, 2173, 2176, 2181, 2212, 2240, 2248-2249, 2257-2258, 2264, 2289-2290, 2294, 2347);

- a mostly normal consultative mental examination from Ryan Wagner, Psy.D., showing that Plaintiff was cooperative, alert, responsive, and oriented; easily established rapport; had clear and logical thought processes, adequate receptive language skills, clear and well-articulated speech, no current suicidal ideation or intent, no confusion, no difficulty recalling aspects of his upbringing, some thought content involving anxiety swings, limited insight but intact judgment to make decisions affecting his future and conducting his own arrangements sufficiently, an ability to manage funds, and an ability to perform simple mathematic calculations, calculate serial 7s, complete serial 3s with only one error, and recall 5 digits forward, 3 backward, and 3 of 3 words after brief delay (R. at 23-24, 39-40, 2161-2162);

- Plaintiff's reported daily living activities at the consultative mental examination showing that he had the ability to attend to grooming and personal hygiene, prepare meals, drive, and go to the store for necessities (R. at 23, citing R. at 2161);

- reports at a physical consultative physical examination that Plaintiff had a good memory of medical events and was able to describe his medical symptoms, carry on a good conversation, and take part in performing requested tests (R. at 36, citing R. at 2154);

- treatment records noting that Plaintiff's anxiety was "doing okay," his ADHD was within normal limits and stable, and his bipolar disorder was in partial remission (R. at 24, 36, citing R. at 2209, 2211); and

- .Plaintiff's testimony at the hearing that he was diagnosed with ADHD as a child but had started medications only 2 years prior to the hearing, that he had not required inpatient treatment or hospitalization for his mental health symptoms and instead only met with

someone at his family doctor's office over a year ago for 15 to 20 minutes every 3 months, that his medications helped somewhat with taking the edge of his symptoms, that Adderall helped him focus for a few hours, and that he had no difficulty getting along with family, friends, neighbors, or others.  (R. at 24, 38, 56-57, 120-121, 123, 126-127).

On this record, Plaintiff contends that the ALJ played doctor and substituted her own judgment for those of the medical professionals when she found the prior administrative medical findings and opinions unpersuasive.  The Court agrees with the Commissioner that this argument lacks merit because it is essentially a disagreement with how the ALJ decided to weigh the medical opinions and evidence, "which is clearly not a basis for . . . setting aside the ALJ's factual findings."  *Mullins v. Sec'y of HHS*, 836 F.2d 980, 984 (6th Cir. 1987).  It is well-established that it is the ALJ's function to resolve conflicts in the medical evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (ALJs have the "difficult task" of "weighing the evidence"). As the Court of Appeals for the Sixth Circuit has held, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 439 (6th Cir. 2010) (internal citations omitted).

Plaintiff acknowledges that the ALJ's function to resolve conflicts in the medical evidence "may well be true as a general statement."  (Pl's Reply at 9.) She contends, however, in this particular situation, where the same ALJ previously found those medical opinions to be well based and persuasive, "the Court should be skeptical, to say the least, when that same ALJ on remand reverses course and now finds those medical opinions unpersuasive."  (*Id.*)  Even if the Court were skeptical, the ALJ was within her discretion to reweigh the evidence.

22

Moreover, the ALJ is within her right to assess the limitations in the RFC because the ALJ alone, and not a doctor, is responsible for determining a claimant's RFC. *See* 20 C.F.R. §§ 405.1546, 416.946; *Coldiron*, 391 F. App'x. at 439 ("The Social Security Act instructs that the ALJ – not a physician – ultimately determines a claimant's RFC.") The Social Security regulations explain that the ALJ has the final responsibility for determining a claimant's RFC "based on all the relevant medical and other evidence" in the record, including medical opinions. *See* 20 C.F.R. §§ 404.1527(a)(2), (d)(2), 404.1545(a), 416.927(a)(2), (d)(2), 416.945(a). Further, while the ALJ considers medical source opinions, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

For these reason, this aspect of Plaintiff's Statement of Errors is also **OVERRULED**.

## VI.     CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 13) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

               **IT IS SO ORDERED.**

Date: February 10, 2026

*s/ Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**

23